UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| NOSA IMASUEN AND<br>CARILLA R. IMASUEN,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MIDLAND MORTGAGE, A DIVISION<br>OF MIDFIRST BANK, GMAC<br>MORTGAGE, AND GINNIE MAE,<br><br>　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:     Civil No. 3:15CV463 (JCH)<br><br><br><br><br>May 20, 2015 |

GOVERNMENT NATIONAL MORTGAGE ASSOCIATION'S
<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Defendant, the Government National Mortgage Association (Ginnie Mae) of the United States Department of Housing and Urban Development, respectfully moves for the dismissal of the Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

I.　　<u>INTRODUCTION</u>

The Defendant, Ginnie Mae is a corporation wholly owned by the United States within the Department of Housing and Urban Development (HUD).  12 U.S.C. §1717(a)(2)(A). Pursuant to 12 U.S.C. §1721(g), Ginnie Mae operates a mortgage-backed securities (MBS) program.  Under this program, Ginnie Mae authorizes private lenders, which Ginnie Mae refers to as "Issuers," to issue securities backed by federally insured or guaranteed home mortgages. The Issuers either originate the loans or buy existing loans from an originating lender.  The Issuers package the mortgages into groups known as "pools," each pool backing an MBS.  The

MBS securities are sold to private investors, and the funds generated by the sale repay the Issuer for funds that the Issuer used to originate or to buy the loans.  The securities are issued in a principal amount equal to that of the pooled mortgages, and bear an interest rate slightly below that of the mortgages.

Mortgages which are eligible to back Ginnie Mae-guaranteed MBS are (1) mortgages insured under the National Housing Act; (2) mortgages guaranteed by the Department of Veterans Affairs; (3) mortgages guaranteed by the Rural Housing Service; or (4) mortgages guaranteed by the Secretary of Housing and Urban Development under section 184 of the Housing and Community Development Act of 1992.  Ginnie Mae does not set standards for the mortgages which are to be federally insured or guaranteed.  Each agency that is providing the mortgage insurance or loan guaranty sets the standards for the mortgage or loan originated.  The National Housing Act (12 U.S.C. §1701 et seq.) sets out standards under which the Federal Housing Administration (FHA), a component of HUD that is separate and apart from Ginnie Mae, may insure mortgages.  *See*, *for example*, section 203(a) of the National Housing Act (12 U.S.C. §1709(a)).  The Ginnie Mae MBS Guide, 5500.3 Rev. 1(Guide) in Chapter 9-2(A), states as follows:

> Insurance/Guaranty. Each issue of securities must be backed by a separate pool of mortgages… which… mortgage must be, and must remain, insured or guaranteed under the National Housing Act, Title V of the Housing Act of 1949, the Servicemen's Readjustment Act of 1944, chapter 37 of Title 38, United States Code, or section 184 of the Housing and Community Development Act of 1992, and must at all times comply with the requirements for obtaining and maintaining such insurance or guaranty.

In connection with each pool for which an Issuer intends to issue a security and is seeking a Ginnie Mae guaranty for such security, the Issuer and Ginnie Mae execute a "Guaranty Agreement," a copy of which is attached as Exhibit A.  As a condition to providing the guaranty,

2

Ginnie Mae requires Issuers to assign the mortgages to Ginnie Mae. Ginnie Mae then permits the Issuer to hold legal title and service the mortgage loans on its own behalf. The assignment of the mortgage is required so that if the Issuer defaults on its obligation to Ginnie Mae, Ginnie Mae can immediately extinguish the Issuer's interests in the mortgage loans. Unless and until Ginnie Mae defaults the Issuer, legal title to the mortgage loans remain with the Issuer. *See, e.g. United States v. NBD Bank*, 922 F. Supp. 1235 (E.D. Mich. 1996); Guaranty Agreement (Exhibit A); Ginnie Mae Mortgage-Backed Securities Guide; Federal Reserve System Truth in Lending, 74 Fed. Reg. 60143, 60146 (2009).

The Issuer certifies, on form HUD 11705, a copy of which is attached as Exhibit B, that the mortgages meet the requirements of the Guide. Further, in the Guaranty Agreement between Ginnie Mae and the Issuer that is executed for each pool, the Issuer covenants and warrants that each of the pooled mortgages are "eligible mortgages" as defined in the Guide.

In order to make such securities attractive to private investors, Ginnie Mae guarantees that holders of the MBS will receive timely payment of principal and interest, and Ginnie Mae's guaranty is backed by the full faith and credit of the United States.[1] The Issuer serves as mortgagee and is solely responsible for servicing the pooled mortgages and the securities backed by these mortgages.

In circumstances where the loans collateralizing the pools are liquidated from the pools, such as in the case at bar, the remaining principal is passed through to the investor of the security causing the Issuer to liquidate the loan out of the pool. Once the investor is paid, Ginnie Mae no longer has an interest in the loan, and the Issuer then holds both legal and equitable title.

---

[1] By making the MBS more secure and thus more attractive, Ginnie Mae's guaranty helps attract more funds into the secondary mortgage market, thus making more funds available for the government insured and guaranteed loans to low and moderate income home buyers, and thus serving the public purpose of helping to increase home ownership for such persons.

Ginnie Mae, as a governmental entity, is not to be confused with secondary market entities which are federally chartered but privately owned, the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac). Unlike these entities, Ginnie Mae does not purchase the loans or otherwise have legal title to the loans. Only upon default and extinguishment of the Issuer's rights under the Guaranty Agreement does Ginnie Mae take back legal title to the mortgages and become the servicer. The financial benefits and burdens of Ginnie Mae's operations and programs "inure solely to the Secretary of the Treasury." 12 U.S.C. §1722. All of Ginnie Mae's powers and duties are "vested in the Secretary of Housing and Urban Development," and Ginnie Mae is administered under the Secretary's direction. 12 U.S.C. §1723(a).

II. <u>FACTS</u>

According to Complaint, Plaintiffs' loan was originated May 24, 2009 by GMAC Mortgage in the principal sum of $217,283.00 and recorded May 29, 2006 in Volume 946, Page 809 in the Groton Land Records. GMAC Mortgage included Plaintiffs' loan as collateral for a mortgage-backed security pool, number 654375, which was issued June 1, 2006. *See* Exhibit C. Subsequent to the pooling of Plaintiffs' loan, GMAC transferred its interest in pool number 654375 and Plaintiffs' loan was acquired by the Defendant, Midfirst Bank (Midfirst) in October 2008. *See* Declaration of Paul R. St. Laurent, III, attached as Exhibit D, at ¶ 10. Upon acquisition of the Plaintiffs' loan, Midfirst assumed GMAC Mortgage's obligations as a Ginnie Mae issuer with respect to Plaintiffs' loan and was required to service the mortgage in accordance with the Ginnie Mae Guaranty Agreement. *See* Exhibit A. As of January 2015, Midfirst liquidated the loan from the Ginnie Mae MBS. Upon liquidation the loan no longer served as collateral for a security and the investors received the entire remaining principal and

4

interest on the loan.  Once the loan ceased to be collateral for the security and the investors received full payment, Ginnie Mae no longer had any interest in the loan.  *See* Exhibit D, at ¶¶ 9-11.

In order for GMAC Mortgage and subsequently Midfirst to receive the Ginnie Mae guaranty for the security backed by the Plaintiffs' loan, the Guaranty Agreement required the assignment of the  mortgage to Ginnie Mae at securitization.    However, pursuant to the Guaranty Agreement, Issuer held legal title to the mortgage loan and serviced the loan.  This means that as a Ginnie Mae approved Issuer and servicer of Plaintiffs'  loan, Midfirst is the holder of the note and mortgage.

Ginnie Mae was not a party to the origination of the Plaintiffs' loan and had no interaction with Plaintiffs or any other mortgagors of loans that collateralized the securities for which Midfirst, or any other entity was the Issuer.  Although Ginnie Mae guarantees to the investors the timely payment of principal and interest on the MBS, it does not buy or sell the loans or issue the MBS.  Midfirst, as the holder of the legal title to Plaintiffs' loan, has the right to collect the mortgage payments to the extent that they are due.  Plaintiffs' mortgage payments are not paid or forwarded to Ginnie Mae and in this instance the Plaintiffs' loan is no longer collateral for the Ginnie Mae securities.  Therefore, Ginnie Mae has no authority to release the security on this loan and is not the correct party to respond to any issues in connection with the Plaintiffs' loan or the servicing thereof.

ARGUMENT

III. <u>THE COURT LACKS JURSDICTION OVER THIS ACTION</u>

*A. No Privity of Contract Exists between Ginnie Mae and the Plaintiffs*

Although assignments to Ginnie Mae are a function of the contracts between Ginnie Mae and its Issuers, this does not provide a basis for federal court jurisdiction. The Tucker Act, 28 U.S.C. §1491(a), provides that the United States Court of Federal Claims has jurisdiction over contract claims of any size against the United States. One of the central tenets of the Tucker Act is that the plaintiff and the United States must be in privity of contract with each other; persons not in privity of contract cannot sue for breach of contract. *Erickson Air Crane Co. of Washington, Inc. v. United States,* 731 F.2d 810, 813 (Fed. Cir. 1984); *United States v. TAC Construction Company, Inc.*, 760 F. Supp. 590, 597(S.D. Miss. 1991); *Eubanks v. United States*, 25 Cl. Ct. 131, 137 (1992); *California Sand and Gravel, Inc. v. United States*, 22 Cl. Ct. 19, 24, 26 (1990) (only a party with direct contractual relationship with the United States may bring a breach claim under the Tucker Act).

The same contractual relationship is required under The Little Tucker Act, 28 U.S.C. §1346(a)(2), which gives the appropriate district court concurrent jurisdiction over a breach of contract claim against the United States for amounts in controversy of less than $10,000. *United States v. Bormes*, 133 S. Ct. 12, 184 L. Ed. 2d 317, 2012 U.S. LEXIS 8705, 81 U.S.L.W. 4007, 23 Fla. L. Weekly Fed. S 529 (U.S. 2012).

Mortgagors, however, are not parties to the contracts executed between Ginnie Mae and their issuers, nor are they third party beneficiaries to the contracts. Accordingly, neither the Tucker Act nor the Little Tucker Act provides the requisite waiver to bring a contract action relating to these contracts.

In *Sanchez v. Homestead Funding Corp.*, 2014 WL 4145546, *2 (D. Conn. Aug. 19, 2014), this Court ruled that a similarly situated plaintiff could not maintain a contract-based claim against Ginnie Mae.  There, the plaintiff's mortgage was also pooled in Ginnie Mae's MBS program and the Court found plaintiff lacked privity with Ginnie Mae.  This Court dismissed the action against Ginnie Mae finding no basis to assert subject matter jurisdiction.  As in *Sanchez*, Ginnie Mae is not in privity of contract with the Plaintiffs in this case and the Court should dismiss the Complaint.

  B. *Plaintiffs Lack Standing to Assert a Claim*

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'"  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  In the absence of an actual case or controversy, the Court is without jurisdiction to decide the case.  *See, Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also, Poe v. Ullman*, 367 U.S. 497, 502 (1961).  The requirement that a litigant possess standing to sue "is an essential and unchanging part of the case-or controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Article III's standing requirement contains three elements.  First, "the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal citations and punctuation omitted).  Second, "there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Id*.  (citation and internal punctuation omitted).  Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id*. at 561 (citation and internal punctuation omitted).

The Plaintiffs cannot satisfy these elements because the Plaintiffs have not alleged specific conduct by Ginnie Mae. Rather, the Plaintiffs improperly attribute all of the actions of all of the Defendants to one another.

### IV.    THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Plaintiffs do not allege any facts relating to conduct by Ginnie Mae that would show that the Plaintiffs are entitled to relief from Ginnie Mae. Moreover, even if the allegations of misconduct could be made, Ginnie Mae no longer has any interest in the Plaintiffs' mortgage since it has been liquidated from the pool.

Ginnie Mae was a guarantor of MBS collateralized by the Plaintiffs' loan until the loan was paid in full and removed from the pool in January 2015. As guarantor, Ginnie Mae requires that the Issuer "transfer, assign, set over and otherwise convey to Ginnie Mae all of the right, title, and interest of the Issuer in and to the [mortgage loans.]" Ex. A at 5. As a result, if the Issuer defaults, Ginnie Mae can immediately extinguish the Issuer's interest in the mortgage loan, which is the legal title held by the Issuer, in order to service the loan and otherwise perform the duties of the Issuer. However, when an Issuer repurchases a mortgage loan out of the pool, Ginnie Mae ceases to have an interest in that mortgage loan. *See* Guaranty Agreement, Exhibit A; *United States of America v. NBD,* 922 F. Supp. 1235 (E.D. Mich. S.D. 1996).

F.R.Civ.P. 12(b)(6) provides for a dismissal of a Complaint "for failure of the pleading to state a claim upon which relief can be granted." Rather, the Complaint must include "sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Even *pro se* pleadings "must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." Brazil v. United States Dept. of Navy, 66

F.3d 193, 199 (9th Cir. 1995).  Construing the Complaint in the light most favorable to the Plaintiffs, the Complaint does not state any discernible claims against Ginnie Mae upon which relief can be granted.

V.     CONCLUSION

For the aforementioned reasons, Ginnie Mae is not a relevant party to this proceeding, as Ginnie Mae does not have an interest in the mortgage loan at issue in the Complaint.  Ginnie Mae is neither the (i) Issuer/ Lender of record, (ii) an investor in the mortgage, nor (iii) in privity of contract with the Plaintiffs, nor have Plaintiffs stated a case or controversy much less a claim upon which relief can be granted.  Therefore, Ginnie Mae should be dismissed with prejudice as a Defendant in these proceedings pursuant to Fed.R.Civ.P. 12(b)(1) and (6).

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY


  /s/ Julie G. Turbert
JULIE G. TURBERT
ASSISTANT U.S. ATTORNEY
ATTORNEY BAR # ct23398
157 CHURCH STREET
NEW HAVEN, CT  06510
TELEPHONE:  (203) 821-3700
FAX: (203) 773-5373
EMAIL:  Julie.Turbert@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2015, a copy of foregoing Government National Mortgage Association's Memorandum in Support of Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

I hereby certify that a copy of the within and foregoing Government National Mortgage Association's Memorandum in Support of Motion to Dismiss has been mailed, postage prepaid, on this 20th day of May, 2015, to:

Nosa Imasuen, pro se
6 Troy Avenue
Groton, CT  06340

Carilla R. Imasuen, pro se
6 Troy Avenue
Groton, CT  06340

      /s/ Julie G. Turbert
JULIE G. TURBERT
ASSISTANT U.S. ATTORNEY
ATTORNEY BAR # ct23398
157 CHURCH STREET
NEW HAVEN, CT  06510
TELEPHONE:  (203) 821-3700
FAX: (203) 773-5373